UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6250-CR-FERGUSON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

KIMBERLY CRESPI,

        Defendant.
_____/



## UNOPPOSED MOTION FOR CONTINUANCE

Defendant, Kimberly Crespi, respectfully moves for a continuance of the trial/plea in this matter by a period of at least ninety (90) days, and in support states as follows:

1. Defendant was arraigned in this matter on September 8, 2000. She was arraigned on a superseding indictment on October 6, 2000. This Court has previously granted motions to continue in order to allow a psychological evaluation of Ms. Crespi. The Court had set this matter for a status on May 17, 2001, but the hearing was cancelled.

2. As the Court is aware, Ms. Crespi was involved in a serious automobile accident in March of this year. Counsel retained the services of Dr. Michael Walczak, a neuropsychologist, to evaluate Ms. Crespi in light of her recent head injuries. Dr. Walczak has met with and tested Ms. Crespi and has issued a preliminary report, which indicates that Ms. Crespi has suffered a serious head injury and has severe memory loss. It is his opinion that there are competency issues and that Ms. Crespi is probably unable to assist rationally with her defense at his point. It is likely, however, that her situation will improve with time. Dr. Walczak would like to have the opportunity to collect and evaluate medical reports and test results in order to make a more complete evaluation. He would



also like to have an opportunity to observe and assess her improvement as she recovers from the injury. A copy of Dr. Walczak's preliminary report is attached.

3. In his report, Dr. Walczak advises that recovery form this type of trauma generally takes between six months and a year. Counsel respectfully asks that this case be reset for a status in ninety days, at which time we will have an updated report from Dr. Walczak.

4. Counsel has spoken with Jeff Kay, the Assistant United States Attorney handling this matter for the government, who has authorized counsel to represent that the government has no objection to the granting of the relief requested in this motion. At the government's request, counsel will obtain a signed waiver of speedy trial from Ms. Crespi and file the waiver separately when received.

5. Defendant is currently on bond.

WHEREFORE, Defendant Kimberly Crespi, through undersigned counsel, respectfully requests that the trial/plea in this cause be continued by a period of at least ninety days to permit recovery from her head injuries and to allow for a more complete mental health evaluation.

KATHLEEN WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Patrick M. Hunt
Assistant
Federal Public Defender
Attorney for Defendant
Florida Bar No. 571962
One East Broward Boulevard
Suite 1100
Fort Lauderdale, Florida 33301
(954) 356-7436
FAX 954/356-7556

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was mailed/delivered this 17th day of May, 2001 to Jeff Kay, Assistant United States Attorney at 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, and to United States Pretrial Services Officer Jim Jamros, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301

_____
Patrick M. Hunt

***MICHAEL F. WALCZAK, PSY.D.***
*DOCTOR OF PSYCHOLOGY*
*767 S. STATE ROAD 7, SUITE 16*
*MARGATE, FLORIDA 33068*
*PHONE: (954) 917-3600*
*FAX: (954) 917-3626*

May 15, 2001

Mr. Patrick M. Hunt
Assistant Federal Public Defender
101 NE Third Avenue, Suite 202
Ft Lauderdale, FL 33301

RE:   ***United States* v. Kimberly Crespi**

Dear Mr. Hunt:

I had the occasion to see Kimberly Crespi on 05/06/01 and 05/07/01. We met on those days for a total of 6 hours. All the time spent with Ms. Crespi was face to face. All the testing administered was given by this psychologist.

The reason for this evaluation was to assess Kimberly regarding her recent head trauma. Kimberly is 33 years old. She is married to John. She has three children. The 16-year-old boy and 13-year-old boy live with their birth father in Miami. The 16-year-old boy lives with Kimberly and her husband. The child is not related biologically to John. The child's father, Kimberly's deceased ex-husband, was killed in an auto pedestrian accident in February of this year. This is mentioned because Kimberly and her son were in the car with him just before a car struck him. They did not witness the accident. However, there appears to be guilt over this event.

Kimberly was born in South Florida. She did not graduate high school. She does not remember what grade she left school.

Ms. Crespi has been on social security disability since 1995. She was injured as a waitress working for Denny's. She said she could not remember the details of what happened that led to her accident. She walks with a noticeable limp and appears to have the gait seen in individuals with footdrop.

On March 14, 2001 her vehicle was struck by another vehicle on SR 441. Her car flipped and slid upside-down for 200 feet. She said she was able to get out of the car. She said she was livid. However, she did realize she was injured and

**Patrick Hunt, Assistant Federal Public Defender**  **Page 2**
**United States v. Kimberly Crespi**  **May 15, 2001**

since that time has been treated for a shoulder injury. There was no loss of consciousness. She did have a seizure shortly afterwards. She was already on Dilantin for a seizure disorder. She had several cuts on her head. One such cut was above the frontal lobe. It appears to be 2 to 3 inches in length. It is just forward of the CZ mark of an EEG 10/20 system. She does not know the number of stitches it took to close that wound. She has since had a cervical MRI, and brain MRI and an EEG. (The EEG may still be forthcoming.)

Her sleep pattern is deeply disturbed. She sleeps for 3 to 4 hours per night and she describes her sleep as fitful. She has sharp pains in her head but claims not to have headaches. Later she described these head pains as headaches. She was having marital problems before the accident and her relationship has been placed under more stress. Her description of her husband varies from non-existent to someone who helps her through her troubled times.

She does not recall the charge against her. She said, "When I try to remember I get anxiety, maybe I'm blocking it. Something with an airport. My brain is scrambled eggs. I can't remember." I did not pursue this avenue of talk for fear she would become too emotional to evaluate validly. As it was, she showed deep depression when she said, "Why did God spare me? He took everything from me. I can't even go to the grocery store. He took my car, head, neck, shoulder and left side of my back."

Her drug history shows she began smoking marijuana at age 13. She said she "smoked a lot." She added she "never really used coke." There is no heroin or other drugs that she admits to. However, there are prescription drugs that play a major role in her current condition. These include Serzone and Xanax. There may be other pain medications in her recent past that she either does not remember or has omitted in this evaluation.

Prior to the testing Kimberly displayed a non-cooperative stance. Her voice bounced from calm to loud. She would become hysterical and show anger and frustration. Most of her emotion was frustration, as she could not remember the details of various events or times of her life. This frustration could be construed as angry or hostile. However, her behavior is the behavior frequently seen in individuals with a recent head trauma. She is confused and easily frustrated and she strikes out without cause at her environment. Her sutured skull, her recent tests and her description of the events are suggestive of a head trauma with the sequalae of behaviors listed above.

In fact it is not recommended to evaluate for neuropsychological damage until at least 6 months post head trauma. In this case the evaluation clearly reveals damage. The test results are a pre-test marker to be followed up within a year to assess her recovery rate.

*Patrick Hunt, Assistant Federal Public Defender*  Page 3
*United States v. Kimberly Crespi*  May 15, 2001

TEST RESULTS

### *The following tests were administered:*
Wechsler Adult Intelligence Test III (WAIS III)
Wechsler Memory Scale III (WMS III)
Wisconsin Card Sort Test (WCST)
Osterrieth Complex Figure
Boston Naming Test (BNT)
Right Left Orientation

These tests are a partial evaluation. The remaining tests could not be completed because of her inability to sustain attention. One could see when she became tired. She was irritable and it was difficult for her to concentrate.

The *WAIS III* revealed an IQ of 70. The test results were low across all measures. Assuming that she has a higher IQ than 70, and this is not known because these records have not been located, this is a sign of global trauma.

The *WMS III* is a memory test normed on the same individuals as the *WAIS III*. Her scores were the lowest composite scores ever recorded by this psychologist. She bottomed out the scores of many subtests. Because the test is based on group norms, this means that she scored at the bottom of the group norms. There is no telling with these tests if she has even lower scores. Other tests must be used to make this determination.
The range of percentile scores (how she performed out of 100 people) was a high of 1 percentile to a low of .1 percentile.

Much of her memory problem is that she cannot attend. One cannot learn something unless one can remember it and one cannot remember if one cannot attend. At present Kim Crespi cannot attend to information presented to her. Her memory scores clearly indicate severe memory damage. The type of damage cannot fully be assessed until her brain naturally recovers from the head trauma. This generally takes between 6 months and a year. This is also the suggested time to do a neuropsychological evaluation to measure the expected loss as the repairs have come close to completion. It is to her advantage that these tests were performed now, as these tests become a baseline to show improvement in the months ahead.

In the final evaluation report there are subtests in which she could/did not remember one item. This suggests that more than head trauma may be affecting her memory. She has significant anxiety as well as an assortment of medications. These may also be part and parcel in the cause of memory loss. This cannot be assessed without further records.

The *Wisconsin Card Sort Test* was administered. This test measures one's fluid thinking. Studies show that the frontal lobes are assessed. Of 6 possible

categories she earned 2. She could not sustain in memory the formula she needed for success. When she did finally sustain a correct answer set she could not replace it with a new response set. This clearly reflects some form of short circuit in the frontal lobes. This is not unusual considering her head injury was just above the frontal lobe.

The *Osterrieth Complex Figure Drawing* was discontinued after the first attempt. In this test she need only copy the figure. She was unable to copy the drawing, as she could not organize the design into meaningful parts in her memory for copying. The design attempt showed a loss of visual continuity. There is a discrepancy in her visual analyzer that may involve the brain's motor strip.

The *Boston Naming Test* was administered to assess storage of words. Her score indicated a significant loss of nouns. This loss is well beyond that seen in individuals her age without head trauma. There is damage to the storage of words and again visual representation associated with words.

Her *right left orientation test* is simply to distinguish right from left via pictoral representation. She scored at chance. This indicates that she cannot rotate designs in her head - a form of problem solving that individuals do on a daily basis.

### SUMMARY:

There is significant quantifiable brain damage with Kim Crespi. She is unable to show scores that reflect her age and projected intelligence and daily functioning. There is a need to validate her recent losses with interviews and medical records. This is not available currently and therefore the evaluation was discontinued to give this information to the court. Please inform what course of action is needed from this point. I believe her losses suggest that competency is an issue. She may be able to give information regarding issues of knowledge but she forgets too easily and cannot hold her attention long enough to remember items later. This is a serious downside to a court appearance. I will gladly offer these test scores for perusal of any psychologist who doubts her memory loss. This may be helpful to the completion of this case.

### RECOMMENDATIONS:

I know that the court is anxious to have an update on Kimberly Crespi. I can only state that she is head injured with a severe memory loss. She will need additional time before she is able to assist rationally in her defense. The evaluation above is but a synopsis of the total evaluation, which is far from complete.

*Patrick Hunt, Assistant Federal Public Defender*                  *Page 5*
*United States v. Kimberly Crespi*                                        *May 15, 2001*

I will need to collect medical records, hospital reports and reports from people who know her to state with psychological certainty that the injuries she reports did in fact occur.

Some of her test results are not available as some of them are still being evaluated and at least one is still to come. Let the test results be completed and evaluated.

I know the awkwardness of this request. Brain injured people have a tendency to exacerbate there most salient quality. If they are calm, they become withdrawn; if they are irritable, they become aggressive; if they tend to overreact, they become hysterical. I believe Kim fits the last category.

Please let me know if this evaluation note is sufficient.

Respectfully submitted,

Michael F. Walczak, Psy.D.
DIPLOMATE, FORENSIC NEUROPSYCHOLOGY,
AMERICAN COLLEGE OF FORENSIC EXAMINERS